UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

REBECCA D. ANDES,                )
                                 )
        Plaintiff,                )
                                 )
v.                               )       No. 3:18-CV-169-HBG
                                 )
ANDREW M. SAUL,[1]                )
Acting Commissioner of Social Security, )
                                 )
        Defendant.                )

# MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 14].

Now before the Court is Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 11 & 12] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 15 & 16]. Rebecca D. Andes ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Andrew M. Saul ("the Commissioner"). For the reasons that follow, the Court will **DENY** Plaintiff's motion and **GRANT** the Commissioner's motion.

## I.    PROCEDURAL HISTORY

On December 29, 2014, Plaintiff protectively filed an application for disability insurance benefits and supplemental security income benefits pursuant to Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* and 1381 *et seq.*, claiming a period of disability that began

---

[1] Andrew M. Saul was sworn in as the Commissioner of Social Security on June 17, 2019, during the pendency of this case. Therefore, pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul is substituted as the Defendant in this case.

on June 1, 2013. [Tr. 20, 71, 95, 171, 175]. After her application was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 126–27]. A hearing was held on June 9, 2017. [Tr. 35–58]. On July 12, 2017, the ALJ found that Plaintiff was not disabled. [Tr. 20–30]. The Appeals Council denied Plaintiff's request for review on February 27, 2018 [Tr. 1–6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on May 2, 2018, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II. ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.
>
> 2. The claimant has not engaged in substantial gainful activity since September 16, 2014, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: cervical intraepithelial neoplasia, status/post ablation procedures and total abdominal hysterectomy and bilateral salpingo-oophorectomy, history of skin cancer, hearing loss, depression, and anxiety (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except limited to indoor work to avoid exposure to the

sun, no exposure to loud noise in order to preserve hearing, occasional exposure to hazards, and limited to work that requires no more than occasional interaction with the public.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on September 17, 1964 and was 49 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 16, 2014, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 23–29].

## III.  STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*,

581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

### IV. DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage

4

in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4) and -(e), 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137,

146 (1987)).

## V. ANALYSIS

Plaintiff asserts that the ALJ's disability decision is not supported by substantial evidence in several regards. First, Plaintiff maintains that the ALJ failed to afford appropriate weight to the opinion of his treating nurse practitioner, Whitney Davis, P.A.–C. [Doc. 12 at 7–9]. Next, Plaintiff alleges that the ALJ did not adequately develop the record by failing to order a consultative examination or have a medical expert testify at the hearing. [*Id.* at 10–12]. The Court will address Plaintiff's specific allegations of error in turn.

### A. Opinion of Plaintiff's Nurse Practitioner

Plaintiff alleges that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to afford appropriate weight to the opinion of his treating nurse practitioner, Ms. Davis. Plaintiff asserts that the ALJ "failed to conduct an appropriate analysis of Ms. Davis' opinion," as the ALJ found that the opinion was inconsistent with the medical record, while also noting that Plaintiff was unable to obtain any treatment records from Ms. Davis and Grace Internal Medicine. [*Id.* at 9]. The Commissioner maintains that the ALJ properly evaluated Ms. Davis' opinion and found that the opinion was inconsistent with the medical record as a whole. [Doc. 16 at 10–12].

Ms. Davis completed two Medical Source Statements on July 15, 2016. [Tr. 441–44]. First, Ms. Davis assessed Plaintiff's physical impairments, and noted that Plaintiff was "unable to stand for long periods of time due to pelvic pain." [Tr. 441]. Ms. Davis opined that Plaintiff had limitations in sitting, standing, walking, stooping, and climbing due to her chronic pelvic pain. [*Id.*]. Additionally, Ms. Davis opined that Plaintiff could never lift or carry, even less than five pounds, during an average workday, as well as that Plaintiff could occasionally use her hands for

6

fine or gross manipulation and raise her right and left arms over her shoulders. [*Id.*]. Next, Ms. Davis noted that Plaintiff would need to elevate her legs every forty-five minutes to an hour, or get up and walk, and take unscheduled break periods due to her extreme pelvic pain. [Tr. 442].

Ms. Davis also completed a Medical Source Statement related to Plaintiff's cancer, and noted Plaintiff's "cervical cancer/post-surgery, chronic abdominal/pelvic pain." [Tr. 443]. Ms. Davis noted that Plaintiff had a hysterectomy which resulted in chronic pelvic pain. [*Id.*]. Further, Ms. Davis indicated that Plaintiff has had significant emotional difficulty with her cancer, as it increased her anxiety to where she does not move due to her increased pain. [Tr. 444]. Accordingly, Ms. Davis opined that Plaintiff could not work or lift, as well as that she could only stand or sit for fifteen minutes during an average workday. [*Id.*].

In the disability decision, the ALJ reviewed Ms. Davis' opinion and afforded it little weight. [Tr. 28]. The ALJ noted that the opinion was "inconsistent with the evidence as a whole," as well as remarked that Plaintiff was "unsuccessful in getting any of this source's records." [*Id.*].[2] The ALJ reviewed that Ms. Davis indicated that Plaintiff "has ongoing severe pelvic pain due to previous cervical cancer," but stated that "no chemotherapy was required and no additional surgery was indicated." [*Id.*]. Next, the ALJ found that Plaintiff's "complaints of severe pelvic pain were not voiced to her gynecologist and the other physicians she has seen," as Plaintiff's "gynecological notes for the two years post-operatively show only mild dysplasia, which is not consistent with

---

[2] At the administrative hearing, the ALJ agreed to leave the record open for the submission of several medical records, including from Grace Internal Medicine, where Ms. Davis had practiced. [Tr. 49]. Following the hearing, Plaintiff's representative submitted medical records from East Tennessee State University Family Medicine [Tr. 478–91], but notified the ALJ that they were unable to obtain records from Grace Internal Medicine "due to the provider's office being closed down" [Doc. 16-1]. Plaintiff's representative then informed the ALJ that "[t]he record is now complete." [*Id.*].

such alleged severe pain." [*Id.*].

Earlier in the decision, the ALJ detailed Plaintiff's treatment for her cervical cancer. Following her total hysterectomy, the ALJ noted that Plaintiff was "discharged the following day and post-operative visits show no complications or reports of severe pain," as well as that follow-up pap smears and pelvic exams from 2015 through early 2017 revealed "only mild dysplasia and no need for specialist care or further treatment." [Tr. 26]. When assessing Plaintiff's allegations of severe pelvic pain, the ALJ found that Plaintiff's allegations of severe pain, including being unable to stand for extended periods of time, are "not consistent with the gynecologic records" which demonstrate that she "tolerated the hysterectomy very well and was discharged the following day with no complications." [Tr. 28]. Additionally, the ALJ stated that follow-up pap smears have shown no more than mild dysplasia, and a review of Plaintiff's progress notes did not indicate that she complained of severe pain. [*Id.*]. Further, the ALJ found that there was no indication that she was prescribed any pain medication after her hospital stay, and neither treating physician "assessed any restrictions or limitations after a small post-operative course." [*Id.*].

Under the regulations, a "treating source" includes physicians, psychologists, or "other acceptable medical source[s]" who provide, or have provided, medical treatment or evaluation and who have, or have had, an ongoing treatment relationship with the claimant. 20 C.F.R. §§ 404.1502; 416.902. Social Security Ruling 06-03p governs the opinions of "not acceptable medical sources." 2006 WL 2329939, at *2 (Aug. 9, 2006).[3] Under the regulations, a "treating source" includes physicians, psychologists, or "other acceptable medical source[s]" who provide,

---

[3] "SSR 06-03p was rescinded [as to claims filed on or after] March 27, 2017, *see* Notice of Rescission of Social Security Rulings, 82 Fed. Reg. 15263-01 (March 27, 2017), but was in effect at the time of the ALJ's decision, and as such, applies here." *Davis v. Comm'r of Soc. Sec.*, No. 1:16-CV-2446, 2018 WL 1377790, at *7 n.6 (N.D. Ohio Mar. 19, 2018).

or have provided, medical treatment or evaluation and who have, or have had, an ongoing treatment relationship with the claimant. 20 C.F.R. §§ 404.1502; 416.902. Evidence from those who are "not acceptable medical sources" or "other sources," including nurse practitioners, "are important and should be evaluated with key issues such as impairment severity and functional effects, along with other relevant evidence in the file." SSR 06–03p, 2006 WL 2329939, at *2; *see McNamara v. Comm'r of Soc. Sec.*, 623 F. App'x 308, 309 (6th Cir. 2015) ("A nurse practitioner is not an 'acceptable medical source' under the applicable regulations, but rather falls into the category of 'other sources.'") (citing 20 C.F.R. § 416.913(d)(1)).

Therefore, as an "other source," Ms. Davis' opinion was not subject to any special degree of deference. *See Meuzelaar v. Comm'r of Soc. Sec.*, 648 F. App'x 582, 584 (6th Cir. 2016) (stating that "the opinion of a nurse or a nurse practitioner—is entitled to less weight than a physician's opinion because a nurse is not an 'acceptable medical source'"). Interpreting Social Security Ruling 06-03p, the Sixth Circuit has found that "[o]pinions from non–medical sources who have seen the [Plaintiff] in their professional capacity should be evaluated by using the applicable factors, including how long the source has known the individual, how consistent the opinion is with other evidence, and how well the source explains the opinion." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007).

Here, the ALJ properly considered Ms. Davis' opinion, and provided several reasons for assigning it little weight. First, Plaintiff misstates the ALJ's reasoning for assigning little weight to Ms. Davis' opinion. The ALJ did not find that her opinion was inconsistent with Plaintiff's treatment records, which were not available to the ALJ, but rather that the opinion was "inconsistent with the evidence as a whole." [Tr. 28]. The ALJ detailed the evidence in the

medical record that he found inconsistent with Ms. Davis' opinion both immediately after affording it little weight, as well as throughout the disability decision.

Additionally, the ALJ properly considered whether Ms. Davis' opinion was consistent with the medical record, and ultimately found that the medical record did not support Plaintiff's complaints of disabling pelvic pain. "The extent to which a physician assistant's opinion is consistent with the record as a whole is a factor in determining how much weight to give that opinion." *Scruggs v. Colvin*, No. 2:15-058, 2016 WL 6110457, at *4 (M.D. Tenn. Sept. 29, 2016) (citing *Irvin v. Comm'r of Soc. Sec.*, 573 F. App'x 498, 501 (6th Cir. 2014)), *report and recommendation adopted by*, 2016 WL 6094370 (M.D. Tenn. Oct. 19, 2016). Importantly, Ms. Davis noted that Plaintiff has "chronic pelvic pain" [Tr. 441, 443], and listed Plaintiff's pelvic pain as the impairment causing the opined functional limitations. However, the ALJ reviewed that Plaintiff's treatment notes did not indicate that she complained of severe pain, and her "gynecological notes" reflect only mild dysplasia in the two years following her operation, "which is not consistent with such alleged severe pain." [Tr. 28]. Although Plaintiff would interpret the medical evidence differently, the Court finds that the ALJ's determination was within his "zone of choice." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009); *see also Huizar v. Astrue*, No. 3:07CV411-J, 2008 WL 4499995, at *3 (W.D. Ky. Sept. 29, 2008) ("While plaintiff understandably argues for a different interpretation of the evidence from that chosen by the ALJ, the issue is not whether substantial evidence could support a contrary finding, but simply whether substantial evidence supports the ALJ's findings.").

The ALJ considered Ms. Davis' status as an "other source," and properly explained the weight assigned to her opinion. *See Meuzelaar v. Comm'r of Soc. Sec.*, 648 F. App'x 582, 584 (6th Cir. 2016). Further, the ALJ was not required to assign controlling weight to the opinion, and

the ALJ assessed how Ms. Davis' opinion was consistent with the medical record as a whole. The consistency of a medical opinion with other evidence in the record is one factor that may be considered in evaluating medical opinion evidence from an "other source." *See* SSR 06-03p, 2006 WL 2329939, at *4. Here, the ALJ discussed the medical record regarding Plaintiff's pelvic pain throughout the disability decision, and summarized Plaintiff's treatment record as a reason for assigning little weight to the opinion. *See id.* at *4–5 (noting that whether an other source's opinion is consistent with other evidence is relevant to evaluation of source's opinion); *see also Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) ("No doubt, the ALJ did not reproduce the list of these treatment records a second time when she explained why Dr. Bell's opinion was inconsistent with this record. But it suffices that she listed them elsewhere in her opinion.") (citing *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014)).

Lastly, the ALJ did not summarily dismiss the opinion because it was given by a nurse practitioner. *See, e.g.*, *Antonaros-Ewing v. Comm'r of Soc. Sec.*, No. 3:14-CV-13, 2015 WL 5047968, at *5 (S.D. Ohio Feb. 17, 2015) ("Such detailed and reasoned explanation shows that, contrary to Plaintiff's contention, the ALJ did not discount [the nurse practitioner's opinions] solely because she is not an 'acceptable medical source.' Instead, the ALJ appropriately recognized that—as an 'other source'—[the nurse practitioner's] opinions are not entitled to 'special deference' under the regulations (in comparison to, for example, a treating physician)."); *cf. Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532 (6th Cir. 2007) (finding the ALJ failed to properly assess the nurse practitioner's opinion, as the "ALJ's *only* explanation for discounting [the nurse practitioner's] opinion was that '[the nurse practitioner] is neither a medical doctor nor a vocational expert, and thus lacks the credentials for making such a determination'").

Accordingly, the Court finds that the ALJ appropriately considered Ms. Davis' opinion and

properly stated his reasons for assigning it little weight. *See Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 550 (6th Cir. 2014) ("Thus, the ALJ properly considered the [therapist's] opinion as an 'other source' and explained her reasons for giving it 'little to no weight.'").

### B. ALJ's Responsibility to Develop the Record

Plaintiff asserts that "[t]he ALJ did not adequately develop the record where, after affording little weight to every medical opinion in the record, he thereafter failed to order a consultative examination or have a medical expert testify at the hearing." [Doc. 12 at 10]. Plaintiff claims that by finding that Plaintiff's mild dysplasia was not consistent with her alleged severe pain, the ALJ "substituted his own interpretation of the available data." [*Id.* at 12]. The Commissioner maintains that the ALJ "gave multiple reasons for discounting Plaintiff's debilitating complaints, and the balance of his analysis is closely and affirmatively linked to substantial evidence in the record." [Doc. 16 at 15].

While the claimant bears the ultimate burden of establishing that she is entitled to disability benefits, the ALJ has an affirmative duty to develop the factual record upon which his decision rests, regardless whether the claimant is represented by counsel. *See, e.g., Wright–Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, (6th Cir. 2010) ("This court has also long recognized an ALJ's obligation to fully develop the record.") (citation omitted); *Lashley v. Sec'y of Health and Human Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983) (stating the ALJ has "the ultimate responsibility for ensuring that every claimant receives a full and fair hearing").

The regulations provide that the agency "may ask [the claimant] to have one or more physical or mental examinations or tests" if the claimant's "medical sources cannot or will not give us sufficient medical evidence" to determine whether the claimant is disabled. 20 C.F.R. § 416.917. Additionally, "[a]n ALJ has discretion to determine whether further evidence, such as

additional testing or expert testimony, is necessary." *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001). The ALJ had no "special, heightened duty to develop the record" in this case because Plaintiff was represented by counsel. *Nabours v. Comm'r of Soc. Sec.*, 50 F. App'x 272, 275 (6th Cir. 2002). However, the ALJ has the ultimate responsibility to ensure that a claimant receives a full and fair hearing, *Richardson v. Perales*, 402 U.S. 389, 411 (1971), which includes a duty to fully and fairly develop the record. *See Johnson v. Sec'y of Health & Human Servs.*, 794 F.2d 1106, 1111 (6th Cir. 1986).

First, Plaintiff claims that the ALJ's RFC determination "must be supported by at least one medical opinion." [Doc. 12 at 11]. However, it is well-established that when evaluating the claimant's RFC, the ALJ is not required to base his RFC findings entirely on a physician's opinion. *See, e.g.*, *Mokbel-Alijahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401–02 (6th Cir. 2018) ("We have previously rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ.") (citing *Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442–43 (6th Cir. 2017) (rejecting the argument that "the ALJ's [residual functional capacity] lacks substantial evidence because no physician opined that [the claimant] was capable of light work"); *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (rejecting the same argument because "the ALJ is charged with the responsibility of determining the [residual functional capacity] based on her evaluation of the medical and non-medical evidence")).

Plaintiff challenges the ALJ's analysis regarding Ms. Davis' opinion that Plaintiff's mild dysplasia upon examination was "not consistent with such alleged severe pain." [Tr. 28]. Additionally, in the disability decision, the ALJ assigned little weight to the opinions of the nonexamining state agency physicians, who opined that Plaintiff had no severe impairments,

13

because the ALJ found that Plaintiff's severe impairments "would limit her to a range of light exertion with the above-stated restrictions related to skin lesions, hearing loss and social anxiety." [Tr. 27].

As the Court has previously detailed, the ALJ provided several reasons for assigning little weight to Ms. Davis' opinion. The ALJ extensively reviewed Plaintiff's treatment notes related to her pelvic pain, and found that the medical record following Plaintiff's hysterectomy did not indicate any complaints of pelvic pain, that she was prescribed any pain medication, or that any physician assessed any restrictions or limitations after a small post-operative course. [*Id.*]. Although Plaintiff asserts that the ALJ improperly interpreted gynecological notes showing only mild dysplasia, the ALJ noted that "the pathology has shown no evidence of any malignancy and no indication of any further [gynecological] treatment needed." [*Id.*]. Ultimately, the ALJ did not improperly interpret Plaintiff's treatment records showing only mild dysplasia; rather, the ALJ summarized the medical record to find no evidence of chronic post-operative pelvic pain. Significantly, Ms. Davis listed "chronic" and "extreme" pelvic pain as the cause of the assessed functional limitations. [Tr. 441–44]. Additionally, the ALJ considered Ms. Davis' opinion, as well as the opinions of the nonexamining state agency consultants, and appropriately detailed his reasoning for affording little weight to the opinions.

An ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering the RFC. *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). "The Sixth Circuit has repeatedly upheld ALJ decisions where the ALJ rejected medical opinion testimony and determined [the] RFC based on objective medical evidence and non-medical evidence." *Henderson v. Comm'r of Soc. Sec.*, No. 1:08-cv-2080, 2010 WL 750222, at *2 (N.D. Ohio Mar. 2, 2010) (internal citations omitted). "Rather, it is the

14

Commissioner's prerogative to determine whether a certain symptom or combination of symptoms renders a claimant unable to work." *Luukkonen v. Comm'r Soc. Sec.*, 653 F. App'x 393, 402 (6th Cir. 2016) (citing 20 C.F.R. § 416.929(c)(1), -(d)(2)). The ALJ is responsible for weighing medical opinions, as well as resolving conflicts in the medical evidence of record. *Richardson v. Perales*, 402 U.S. 389, 399 (1971); *see also* 20 C.F.R. § 416.946(c) (stating the final responsibility for assessing a claimant's RFC rests with the ALJ).

Plaintiff also submits that the ALJ failed to develop the record by not ordering a consultative examination or having a medical expert testify at the hearing after dismissing "the only opinion in the record that spoke to Plaintiff's functional limitations." [Doc. 12 at 12]. However, the Court notes that Plaintiff possesses the burden to demonstrate that she suffers from a disabling condition. *Trandafir v. Comm'r of Soc. Sec.,* 58 F. App'x 113, 115 (6th Cir. 2003) (citing 20 C.F.R. § 404.1512(a)); *see also Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) ("The burden of providing a complete record, defined as evidence complete and detailed enough to enable the [Commissioner] to make a disability determination, rests with the claimant.") (internal citation omitted). Plaintiff fails to point to medical evidence in the record, or contradict the ALJ's interpretation of the objective evidence, regarding her alleged pelvic pain that would establish her disability.

Further, the applicable regulations do not require an ALJ to refer a claimant to a consultative specialist. *See Landsaw*, 803 F.2d at 214; *see also Foster v. Halter,* 279 F.3d 348, 355 (6th Cir. 2001). The regulations provide that the agency "may ask [the claimant] to have one or more physical or mental examinations or tests" if the claimant's "medical sources cannot or will not give us sufficient medical evidence" to determine whether the claimant is disabled. 20 C.F.R. § 416.917. Additionally, it is not error to fail to obtain additional evidence where the record

contains a "considerable amount of evidence" pertaining to the claimant's limitations. *Culp v. Comm'r of Soc. Sec.*, 529 F. App'x 750, 751 (6th Cir. 2013).

Here, as Plaintiff fails to point to evidence to challenge the ALJ's interpretation of the medical record, and the medical record contained sufficient evidence for the ALJ to base his RFC determination on, the Court finds that the ALJ was not required to order a consultative examination. *See Lucas v. Astrue*, No. 1:11CV2497, 2013 WL 1150026, at *4 (N.D. Ohio Feb. 15, 2013) (finding the ALJ was not required to order a consultative examination, as "[w]hile there are no treating physician or treating psychiatrist reports in the record, there are many treatment notes from Plaintiff's medical sources, as well as diagnostic test results, and two agency reviewing psychologist assessments regarding Plaintiff's conditions and abilities"), *report and recommendation adopted sub nom.*, *Lucas v. Comm'r of Soc. Sec.*, 2013 WL 1150019 (N.D. Ohio Mar. 19, 2013). Although the ALJ agreed to leave the record open for Plaintiff to submit additional records from Ms. Davis, Plaintiff submitted treatment records from another provider and stated that "[t]he record is now complete." [**Doc. 16-1**].

Accordingly, the ALJ's finding that Plaintiff could perform a modified range of light work was within his "zone of choice," despite affording little weight to the opinions of Plaintiff's treating nurse practitioner and the nonexamining state agency consultants. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (holding that "[t]he substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way" and that as long as substantial evidence supports the ALJ's finding, the fact that the record contains evidence which could support an opposite conclusion is irrelevant) (quotations omitted).

## VI. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 11**] will be

**DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 15**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be **DIRECTED** to close this case.

      ORDER ACCORDINGLY.

                                                      _____
                                                      United States Magistrate Judge